UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLUMUYIWA AYODEJI ADELEKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:05-CV-1720-G |
| COMCAST CABLE | ) | |
| COMMUNICATION, | ) | **ECF** |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion for summary judgment of the defendant, Comcast Cable Communication[1] ("Comcast"), on the claims asserted against it by the plaintiff, Olumuyiwa A. Adeleke ("Adeleke"). For the reasons stated below, Comcast's motion for summary judgment is granted.

---

[1] Adeleke's complaint names Comcast Cable Communication as the defendant. *See* Original Complaint ("Complaint") at 1. Comcast asserts, however, that it has been incorrectly named and should be referred to as Comcast Cable of Plano, LP. *See* Defendant's Motion for Summary Judgment at 1.

I. BACKGROUND

This is an employment discrimination case, filed by Adeleke *pro se* under the provisions of Title VII of the Civil Rights Act of 1964, as amended. In his original complaint, filed August 25, 2005, Adeleke alleges that Comcast discharged him from his position as Cable Technician by reason of his religion. *See* 42 U.S.C. § 2000e-2(a)(1). While this case was pending, Adeleke also filed, on December 27, 2005, a retaliation claim with the Texas Workforce Commission, Civil Rights Division, and the Equal Employment Opportunity Commission ("E.E.O.C."), but that claim was not asserted in time to meet the deadline for amending pleadings imposed by the court's scheduling order in this case and was thus unfiled on January 31, 2006.[2]

On February 7, 2006, Comcast filed this motion for summary judgment on Adeleke's disparate treatment claim on the ground that the undisputed evidence showed that Adeleke was neither "qualified" as a field technician nor "replaced or

---

[2] On December 13, 2005, Adeleke filed amended pleadings incorrectly labeled as supplemental pleadings. Because these "supplemental" pleadings attempted to set forth facts that had occurred before August 25, rather than facts that had occurred since that date, Plaintiff's Supplemental Pleadinds [sic] at 1, they were stricken by order of the court on January 23, 2006.

Meanwhile, on December 27, 2005, Adeleke filed a charge of retaliation with the E.E.O.C. and petitioned the court for leave to file supplemental pleadings based on this new E.E.O.C. charge. *See generally* Plaintiff's Motion for Leave to Supplement Its [sic] EEOC Charge. Because in the resulting "supplemental" pleadings, Adeleke *again* attempted to amend his original complaint with facts alleged to have occurred prior to August 25, 2005, his second supplemental pleadings were unfiled. *See* Order, January 31, 2006.

treated any differently than others outside of his asserted protected class." Defendant's Brief in Support of Motion for Summary Judgment ("Motion") at 17. Comcast additionally moved for summary judgment on Adeleke's co-worker and supervisor harassment claims. Motion at 20-27.

## II. ANALYSIS

### A. Evidentiary Burdens on Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).[3] The movant makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

---

[3] The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir.1986).

Once the movant makes this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the nonmovant, *id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

## B. Religious Discrimination

A plaintiff filing a claim for religious discrimination under Title VII must prove a *prima facie* case showing that the plaintiff "(1) is a member of a protected class;

(2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999); *Rubinstein v. Administrators of the Tulane Educational Fund*, 218 F.3d 392, 399 (5th Cir. 2000) (applying to religious discrimination cases the *prima facie* case for racial discrimination set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)), *cert. denied*, 532 U.S. 937 (2001); see also *McCracken v. Exxon Mobil Corporation, Inc.*, No. A. H-03-5726, 2006 WL 456252, at *1 (S.D. Tex. February 23, 2006).

1. *Comcast's Motion for Summary Judgment*

Comcast attacks two of the elements of Adeleke's *prima facie* case, *viz.*, (1) that Adeleke was not qualified for his position and (2) that Adeleke has not shown that he was replaced by someone outside the protected class. Motion at 17-20.[4] In support

---

[4] Comcast has interpreted Adeleke's complaint as asserting a disparate treatment religious discrimination claim. Motion at 16. It is also possible, however, to interpret the complaint as alleging that Adeleke was discharged because of his religion. *See* Complaint at 7 ("the employer [Comcast Cable] terminated or discharged my employment because of my religious beliefs . . . ."). To establish a *prima facie* case on such a claim, Adeleke would have to show that (1) he has a bona fide religious belief that conflicted with an employment requirement; (2) the employer was informed of that belief; and (3) he was discharged for failing to comply with the conflicting employment requirement. *George v. Home Depot Incorporated*, 51 Fed. Appx. 482, ___ (5th Cir. 2002); *Bruff v. North Mississippi Health Services, Inc.*, 244 F.3d 495, 499 n.9 (5th Cir.), *cert. denied*, 534 U.S. 952 (2001); *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 273 (5th Cir. 2000). Even if Adeleke's claim of religious discrimination is interpreted in this fashion, Comcast is still entitled to summary judgment, for there is no evidence that Comcast was ever informed of Adeleke's religious beliefs. See *Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 934 (7th Cir.
(continued...)

of its motion for summary judgment, Comcast has included affidavits from three employees present at Adeleke's termination: Human Resources Manager Emma Smith, Technical Operations Supervisor Shane Reese, and former Technical Operations Manager Marshall Dudley. *See* Appendix to Defendant's Motion for Summary Judgment ("Defendant's Appendix") at 1. Additionally, Comcast has submitted discovery and oral deposition responses elicited from Adeleke. *Id.*

At Comcast, cable technicians are evaluated by quantitative performance standards. Adeleke's evaluations, reflecting the poor quality of his work, are part of the record. Defendant's Appendix at 31, 43-44 ¶¶ 40-43. Adeleke's rate of repeat service calls, for example, was approximately twice the number expected from a cable technician, and his missed appointments were eight times the expected number. *Id.* at 72.

Additionally, a cable technician is required to perform well on the ComTech 2 practical exam. *Id.* at 3 ¶ 10. Adeleke failed this exam, including the failure to perform a basic service call. *Id.* at 20, 43 ¶¶ 36-38.

Comcast also submitted evidence of numerous customer and supervisor complaints against Adeleke during his training period. See *id.* at 3 ¶ 10, 14-22. These included complaints that Adeleke was not qualified for his position, based on

---

[4](...continued)
2003) ("It is difficult to see how an employer can be charged with discrimination on the basis of an employee's religion when he doesn't know the employee's religion . . .").

his inability to handle the required responsibilities of a cable technician, including his inability to resolve customer problems, provide true records, and to treat customers and co-workers with respect, diligence and care. *Id.* His substandard performance was documented in three separate corrective action reports, and each of these reports was predicated upon multiple incidents of inappropriate conduct or substandard performance. Additionally, these reports were all issued shortly after Adeleke came to work as a cable technician, between February 21, 2005, and April 5, 2005. *Id.*

February 21, 2005, marked Adeleke's first receipt of a corrective action report. *Id.* at 14. On that occasion, Adeleke, upon having difficulty communicating with a customer, asked the customer whether he was a "Jap." *Id.* Adeleke also indicated on his performance records that a job was complete when it had not been finished, and he failed to follow repeated requests to return company property within seven hours, despite numerous phone calls. *Id*. On March 7, 2005, after Adeleke damaged customer property and failed to complete two other jobs, Comcast warned him via his second corrective action report that this was his "final written warning" and that any further violation could result in "termination." *Id.* at 17. Adeleke received his third corrective action report on April 5, 2005. *Id.* at 18. This report, which included incidents of substandard performance, falsification of records, customer complaints, and uncooperative attitude, including originating and propagating a false report of cable outage across an entire service area, sanctioned Adeleke with termination. *Id*. at

18-19, 42 ¶ 35.  In addition to affidavits supporting the reports, Comcast provided admissions that Adeleke had the opportunity to -- but did not -- object to all three corrective action reports.  See *id*. at 117-18, 125, 130-32, 138-40.

Despite the conduct of Adeleke described in the first two corrective action reports, Comcast continued to train him on his job at Comcast.  See *id*. at 5-6 ¶¶ 21-25, 43 ¶ 39, 85.  These training sessions included private educational sessions between Adeleke and his supervisor, extension of the usual 90-day probationary and training period, and responding to Adeleke's difficulties with an intent to ameliorate his performance.  *Id.*

Comcast has carried its summary judgment burden of showing that there is no genuine issue of material fact regarding Adeleke's qualifications for the job and whether persons outside the protected class were treated more favorably than Adeleke.  Therefore, the burden shifts to Adeleke -- as the nonmovant -- to demonstrate that an issue of material fact exists with respect to these elements of his claim.[5]

## 2. *Adeleke's Response*

Now that Comcast as the movant has carried its burden, Adeleke must direct the court's attention to evidence sufficient to establish that there is a genuine issue of material fact, *i.e.*, evidence that he was qualified as a Comcast cable technician or that

---

[5]   Comcast points out that Adeleke has identified no non-Christians who were treated more favorably than he was.  Motion at 19.

non-Christians were treated more favorably than he was. To carry this burden, Adeleke must show that the evidence is sufficient to support a resolution of the factual issue in his favor. See *Anderson*, 477 U.S. at 249. Pleadings or other unsubstantiated assertions will not meet this summary judgment burden. See *Calbillo*, 288 F.3d at 725; *Isquith for and on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988).

Adeleke provided no affidavits in support of his pleadings; therefore, the entire contents of those pleadings are unsubstantiated and will not satisfy his summary judgment burden. *Isquith*, 847 F.2d at 199. Adeleke's response contains unsubstantiated factual assertions by him, and they, too, fail to satisfy his summary judgment burden. *Calbillo*, 288 F.3d at 725. Adeleke was granted leave to file a sur-reply, Order, filed March 24, 2006, but he still provided no evidence in affidavit form.

Having reviewed the exhibits to Adeleke's response, which are comprised largely of photocopied documents, the court finds nothing that tends to demonstrate the existence of an issue of material fact. They include copies of Adeleke's test scores and promotions that occurred prior to the dates in question. *See* Plaintiff's Response to Defendant's Motion for Summary Judgment at G and H. These facts relate *in part* of his qualifications to be a Comcast cable technician, but they do not refute the evidence that he failed his ComTech2 practical exam. There is nothing in this series

of photocopies tending to show that Adeleke was qualified to be a cable technician or that non-Christians replaced Adeleke after his termination. Adeleke's religion is not mentioned at all in these documents.

Adeleke has not met his burden of demonstrating that a material fact issue exists on his claim of religious discrimination. Summary judgment must therefore be entered in Comcast's favor on this claim.

C. <u>Harassment Arising from a Hostile Work Environment Claims</u>

Because the plaintiff is *pro se*, Comcast -- out of an abundance of caution -- seeks summary judgment on several claims of harassment not explicitly pleaded by Adeleke. In this connection Comcast asserts that Adeleke's complaint could be construed as having alleged hostile work environment claims against both his co-workers and his supervisors.

The elements of a hostile work environment claim against a co-worker are "(1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on [the protected characteristic - *i.e.*, religion]; (4) the harassment complained of affected a term condition or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). By contrast, a hostile work environment claim of harassment against a supervisor need show only

the first four elements.  *Id.*   The court will consider the co-worker and supervisor complaints together.  The burden shifting and evidentiary showings are the same as those outlined above.

### 1.  *Comcast's Motion for Summary Judgment*

For Adeleke's possible claim of co-worker harassment, Comcast argues that Adeleke has not demonstrated that an issue of material fact exists with respect to Comcast's knowledge, the fifth required element.  Particularly, Adeleke admits that he received documents containing the Comcast harassment policy and reporting procedures, which give an employee the ability to complain to the human resources manager about any discrimination.  Defendant's Appendix at 3-4, 23-27, 97, 141.  Moreover, Adeleke never put Comcast on notice of any alleged religious discrimination, because he never complained to *anyone* regarding any religiously-based, co-worker harassment when it was alleged to be ongoing.  *Id.* at 154-156.  Because Comcast has met its burden of pointing out that there is no evidence to support an element of Adeleke's *prima facie* case for his claim of co-worker harassment resulting in a hostile work environment, the burden on the motion shifts to Adeleke -- as the nonmovant -- to demonstrate that an issue of material fact does exist.

For Adeleke's putative claim of supervisor harassment, Comcast argues that there is no evidence to support the third element of a *prima facie* case:  that the complained-of harassment was based on religion.  According to Comcast, the sole

evidence of supervisor harassment motivated by religious animus is the failed ComTech2 practical examination and the three corrective action reports. Motion at 24. The evidence Comcast presents in support of these allegations is supported through Adeleke's own admissions during his deposition. Defendant's Appendix at 149-50. There is nothing in these documents to indicate that the multiple instances of poor quality work by Adeleke or his disparaging treatment of co-workers or customers had anything to do with Adeleke's religion. For these reasons, Comcast has satisfied its burden, as the movant for summary judgment, of pointing out the lack of evidence to support at least one element of Adeleke's putative harassment claims, and the burden therefore shifts to Adeleke to demonstrate that an issue of material fact exists with respect to those claims.

2. *Adeleke's Response*

Again, Adeleke provides no evidence in affidavit form, and there is nothing in his pleadings that will meet Adeleke's summary judgment burden. *Calbillo*, 288 F.3d at 725; *Isquith*, 847 F.2d at 199. Therefore, the court will only consider the documents as they tend to demonstrate an issue of material fact for the element of notice (with respect to co-worker harassment) and harassment on the basis of religion (for Adeleke's claim of supervisor harassment) insofar as they may have risen to the level of a hostile work environment.

In the documents supporting Adeleke's reply, there is evidence that he had "the fear that I may lose my job." Plaintiff's Appendix M (Comcast 00238-39). There is, however, no mention of religion in these documents. Adeleke has submitted evidence tending to support Comcast's arguments on its motion for summary judgment: that there is no religious aspect related to Adeleke's job difficulties. Plaintiff's Appendix at tabs P, Q. These documents show various unsigned complaints about Adeleke's negative work attitude, resistance to authority, and various off-hand comments. *Id*. Moreover, they do not contain any mention of Adeleke's religion or any co-worker's attitude, positive or negative, with respect to his religion. *Id.* One document *does* contain a reference to a "spiritual thing" between Adeleke and persons of Hispanic descent. Plaintiff's Appendix at tab Q. This document has supervisor Shane Reese's name attached to it. *Id.* On further inspection, however, and coupled with Adeleke's counter-reply [sic] to Comcast's motion for summary judgment, this "spiritual thing" apparently has nothing to do with Adeleke's religion but is a different matter altogether.[6]

---

[6] "The mysterious problem of the hispanic cleaner and 'the hispanics' have [sic] been a serious concern which, apart from the medical and psychological problems it has caused my existence in the United States in the past 5 years, in other [sic] to be on the safe side I have made up my mind to keep living with it. Whatever their [Hispanics] agitations [secretly] might be which I strongly believed that it is [sic] treasonable and treacherous against this great country. They have tormented and tourtured [sic] my life beyond resistance. They subjected me to pervactive [sic] demonic attacks which I can proof [sic] with only 3-5 delegated secret agents. They will marvel at what they will be made to observe. This court will note that in
(continued...)

Adeleke has failed to demonstrate an issue of material fact regarding harassment or notice to his supervisors of any such harassment. His failure to do so means that Comcast is entitled to summary judgment on whatever claims of harassment Adeleke may be attempting to assert in this case.

### III.  CONCLUSION

For the foregoing reasons, Comcast's motion for summary judgment on all of Adeleke's claims is **GRANTED**.

**SO ORDERED**.

May 18, 2006.

_____
A. JOE FISH
CHIEF JUDGE

---

⁶(...continued)
Appendix---H. [sic] is a police report dated back to 2002.  This report showed that I have had previous report.  [Note:  The report shows that an unidentified person or persons "egged," or threw eggs at, presumably, the plaintiff's car.]  All these, [sic] ever before I joined this defendant.  This same problem came against me [sic] at Bank of America in 2001 through S.L. [an individual with an Hispanic surname].  The same problem came up at Dallas County Tax office through A. [an individual with an Hispanic first name].  This problem at present is prevailing [sic] at my new job . . . where the cleaners are all over me with their trash bin.  I submitted a photo to the Attorney of record's office concerning the same problem at present.  I was almost going to lose this present job if not that majority of the co-employees are from outside of this country.  When this problem came against me at the Plano office, solely because of the hostility prevailent [sic] against me among these employees, though they witnessed how the cleaner was all over me and scrubbing my legs with the mop stick yet, they betrayed me for retaliatory reasons and still took my job."  Plaintiff's Counter-Reply [sic] to the Defendant's Reply in this Motion for Summary Judgment at 18-20.